718 F.3d 773
United States Court of Appeals,
Eighth Circuit.

Gale HALVORSON; Shelene Halvorson,
Husband and Wife, Plaintiffs–Appellees
v.
AUTO–OWNERS INSURANCE COMPANY; Owners
Insurance Company, Defendants–Appellants.

No. 12–1716.   |   Submitted: Oct.
17, 2012.   |   Filed: July 3, 2013.

**Synopsis**
**Background:** Insureds filed state court class action against automobile insurer, claiming breach of contract and bad faith due to insurer's percentile reduction of payment for medpay or personal injury protection (PIP) claims. Following removal, the United States District Court for the District of North Dakota, Ralph R. Erickson, Chief Judge, denied certification of proposed class of insureds whose policies were issued in Minnesota, on grounds that Minnesota law mandated arbitration of all no-fault claims for less than $10,000, but granted certification of class of insureds whose policies were issued in North Dakota. Insurer appealed.

**[Holding:]** The Court of Appeals, Smith, Circuit Judge, held that proposed North Dakota class did not satisfy predominance requirement for certification.

Reversed and remanded.

**Attorneys and Law Firms**

*774 Lori McAllister, argued, Lansing, MI, Michael J. Morley, on the brief, Grand Forks, ND, for Appellant.

Todd Jackson, argued, Tucson, AZ, David R. Bossart, Fargo, ND, Eugene Nolan Goldsmith, Sue Ann Welch, Tucson, AZ, on the brief, for Appellee.

Before LOKEN, SMITH, and BENTON, Circuit Judges.

**Opinion**

SMITH, Circuit Judge.

Gale and Shelene Halvorson ("the Halvorsons") filed a class action complaint against their automobile insurance company, Auto–Owners Insurance Company ("Auto–Owners") and its subsidiary, Owners Corporation, for breach of contract and bad faith. The Halvorsons sought to certify a class of all persons covered by Auto–Owners's medpay or personal injury protection (PIP) coverage under policies issued in North Dakota and Minnesota. More specifically, the class included those policy owners who submitted claims for payment of medical expenses and who received less than the submitted amount following a percentile-based review of the claim. The district court denied certification of the proposed class for policies issued in Minnesota, because Minnesota law mandated arbitration of certain claims. *775 The district court did, however, certify a class for those whose policies were issued in North Dakota. Auto–Owners appeals, arguing that the district court abused its discretion in certifying the North Dakota class. We reverse and remand for further proceedings consistent with this opinion.

**I. *Background***

Shelene Halvorson purchased no-fault PIP from Auto–Owners, the parent of the wholly owned subsidiary, Owners Corporation. The policy stated that Auto–Owners was obligated to pay "reasonable charges incurred" for the medical services necessary to treat injuries sustained in an auto accident. Following an automobile accident, Shelene Halvorson submitted her medical bills to Auto–Owners. The company paid Shelene's doctor only a portion of his total charge. It declined to pay the remaining $88.01 because it exceeded the "usual and customary" amount for the services. After reaching a settlement with the other car owner, Shelene Halvorson's attorney paid the balance owed to the medical provider. The Halvorsons allege that Auto–Owners employs the use of third-party bill reviewers, who automatically apply what they deem to be "reasonable and customary reductions" (R & C reductions) to claims being paid, resulting in systematic and unfair financial gains to Auto–Owners. Bill reviewers calculate R & C reductions by compiling prices for medical services in a defined geographic area and then comparing the claims against the 80th percentile for charges in the same area. The 80th percentile represents the amount 80 percent of doctors in the area charge for the medical service rendered. Auto–Owners selected the 80th percentile as a figure likely to provide coverage for what it promised to pay—"the usual and customary" amount for the service. The bill reviewers report their calculations to Auto–Owners's

claims adjusters. Auto–Owners routinely approves payments for 100 percent of charges up to the 80th percentile and rejects charges for amounts that exceed the 80th percentile. Auto–Owners argues that claims adjusters have broad discretion regarding the payment of claims and that providers who feel they have not been adequately compensated can object to the bill-review reduction and ask for full payment. The Halvorsons contend that this discretion is rarely exercised and that adjusters typically accept the recommendation of the bill reviewer and ignore demands for full reimbursement.

The Halvorsons sued Auto–Owners for breach of contract and bad faith and also requested declaratory relief. They asserted that Auto–Owners had designed a bill review system that compounded minor deductions in many claims into substantial savings for the insurance company in the aggregate through a "nickel and dime" strategy that paid below the limits of policy coverage. In short, the Halvorsons contended that Auto–Owners's use of the 80th percentile limit breached the insurance policy because it routinely caused nonpayment of reasonable medical expenses.[1] The Halvorsons note that other insurers also use percentile mechanisms but set them at the 90th percentile. According to the Halvorsons, "Using the 80th percentile is simply an arbitrary cap to increase profits, not a method to identify and exclude outliers or unreasonable bills."

The Halvorsons sought to certify a class of all persons covered by Auto–Owners's medpay or PIP coverage under policies *776 issued in North Dakota and Minnesota, who submitted claims for payment of medical expenses and who received less than the submitted amount following a percentile-based review of the claim. See Fed.R.Civ.P. 23(b)(1), (3). Auto–Owners responded that individual issues predominated and would consequently require an individualized review of each member of the class. Auto–Owners also pointed out that Minnesota policyholders could not be joined in the suit because Minnesota law mandated arbitration.

The district court denied certification of the Halvorsons' proposed class for Minnesota policyholders, because Minnesota law mandated that all no-fault claims for less than $10,000 had to be resolved by arbitration. According to the district court, "[t]he existence of the arbitration requirement shatters the numerosity, commonality, and typicality prerequisites of Rule 23(a)." The court noted that the Halvorsons would be inadequate class representatives for the remaining Minnesota claimants, whose claims would comprise a subclass that "would have radically different interests from the proposed North Dakota class." However, the court, did grant class certification for North Dakota policyholders. Citing Federal Rule of Civil Procedure 23(a) and the numerosity requirement, the court found that the class consisted of over 1,000 members so that joinder would be virtually impossible.

The district court found commonality sufficiently present to warrant class certification. The court relied on *Wal–Mart Stores, Inc. v. Dukes,* which requires all class members to have suffered the same injury while considering "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). According to the district court, "[i]t is apparent that the proposed class of North Dakota policyholders suffered the same injury—if any can be established—as their claims were handled in a uniform matter [sic] by Auto–Owners." The court discounted Auto–Owners's claim that the North Dakota state requirement only to pay "usual and customary charges incurred for reasonable and necessary medical services" would require a unique evaluation of each individual claim. *See* N.D. Cent. Code Ann. § 26.1–41–01. The court concluded that Auto–Owners's standard "bill review process was routinely used and was generally the same for all no-fault claims." The court also observed that Auto–Owners's claims adjusters were expected to follow the payment recommendations of the bill review process. The court highlighted the following testimony from the deposition of Auto–Owners's Administrator of Auto Medical Benefits:

> Q. Okay. Now, in the ordinary course if the bill was determined to be related to the accident and there were no errors evident in the review process, the payment would be issued in accordance with that EOR's recommendations and reductions?
>
> A. Yes

\* \* \*

> Q. Okay. Was it the procedure and protocol that adjusters simply could choose whether or not to utilize the bill review process?

\* \* \*

> A. No.

\* \* \*

Q. They were expected to use it; correct?

A. Yes.

The court concluded that there was sufficient commonality to establish the class, because North Dakota policyholders suffered *777 the same injury, if any, since their claims were handled in a uniform manner.

Regarding typicality, the district court found "nothing individually remarkable about Shelene Halvorson's claim that makes it atypical in comparison to the rest of the proposed class" and concluded that the Halvorson's claim was "squarely typical" of the proposed class's claim. When discussing adequacy of representation, the court cited Rule 23(a)(4)'s requirement of having (1) a qualified plaintiff's attorney and (2) a plaintiff that did not have interests antagonistic to the class. The court concluded that the Halvorsons' attorney had the requisite amount of experience and nothing in the record suggested that Halvorsons' interests were at odds with the proposed class.

Lastly, the court found that questions of law or fact common to the class members predominate over any questions affecting individual members and that a class action was the superior method to adjudicate the controversy. The court observed that "the Halvorsons will have to prove at trial that Auto–Owners's use of the third-party bill review process violated the terms of the PIP coverage in each individual contract." The court found that the Halvorsons focused their case on Auto–Owners's bill review process and how they used it. The court concluded that the key question of the case "[w]as [whether] Auto–Owners's use of the bill review process [was] reasonable under the terms of its insurance contracts."

The district court certified the following class:

> From December 10, 2004, through the present, all persons covered by Auto–Owners medpay or PIP policies issued in North Dakota, and their provider assignees, who (1) submitted claims for payment of medical expenses to Auto–Owners pursuant to an Auto–Owners auto policy's PIP coverage; (2) were paid an amount less than the submitted medical expenses based upon a percentile-based reduction resulting from Auto–Owners' third-party bill review process during the defined class period; and (3) were paid an amount less than the policy limits for their claims. Excluded from the class are the following: Auto–Owners, their officers and employees, their affiliates, any entity in which Auto–Owners has a controlling interest, and successors or assigns of any of the foregoing, and those persons who have exhausted the policy limits applicable to their PIP coverage.

## II. *Discussion*

In this appeal, Auto–Owners challenges the district court's certification of the North Dakota class. Auto–Owners raises two main arguments: (1) that the district court abused its discretion when it certified a class where individual issues will predominate and where the other requirements of Rule 23 are not satisfied and (2) that the district court's decision is at odds with decisions reached by the majority of courts that have considered similar class certification cases.

> [A] party must not only "be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact," typicality of claims or defenses, and adequacy or representation as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).

*Comcast Corp. v. Behrend,* ––– U.S. ––––, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (quoting *Dukes,* 131 S.Ct. at 2551–52). Upon review, we conclude that the predominance requirement of Rule 23(b)(3) is not met and that the Halvorsons' claims should not be certified as a class action.

*778 Auto–Owners argues that individual issues predominate in this case and that some class members would not have standing, thus defeating class certification. Auto–Owners explains that in order to have standing an individual claimant would have to prove that Auto–Owners paid a claim at a lower rate than what would be deemed a "usual and customary" rate. Thus some class members may have been paid the "usual and customary" rate, not have suffered an injury, and not have standing. Auto–Owners further argues that the class members with standing cannot be readily

identified absent a file-by-file review. Specifically, Auto–Owners contends that, because it would have to individually determine whether an R & C reduction recommendation was made and followed and whether total claims had exceeded an individual's policy limit, the class does not meet the Rule 23(b)(3) class certification requirement of administrative feasibility. Auto–Owners contends that small claims courts in North Dakota with jurisdiction of up to $10,000 may be more appropriate for these claims.

Under Rule 23(b)(3), class action may be maintained if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Particular consideration should be given to:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing the class action.

Fed.R.Civ.P. 23(b)(3).

[1] "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* ––– U.S. ––––, 133 S.Ct. 1184, 1191, 185 L.Ed.2d 308 (2013). "Rule 23(b)(3), as an ' "adventuresome innovation," ' is designed for situations ' "in which 'class-action treatment is not as clearly called for'." ' " *Comcast Corp.,* 133 S.Ct. at 1432 (quoting *Dukes,* 131 S.Ct. at 2558). In *Comcast,* the Supreme Court held that a class seeking relief based on antitrust claims "was improperly certified under Rule 23(b)(3)," because it failed to meet the predominance requirement. *Id.* at 1432. The Court found class certification was improper because the plaintiffs were not able to "establis[h] that damages [were] capable of measurement on a classwide basis," and thus could not show "Rule 23(b)(3) predominance." *Id.* at 1433. The Court also noted that the Third Circuit had refused to "entertain arguments against respondents' damages model that bore on the propriety of class certification"—a required inquiry bearing on whether "individual damage calculations will inevitably overwhelm questions common to the class." *Id.* at 1432–33.

[2] [3] The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member. *Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1029 (8th Cir.2010). In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision. *Id.* at 1034.

**\*779** The "irreducible constitutional minimum of standing requires a showing of injury in fact to the plaintiff that is fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision." *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 591 (8th Cir.2009) (internal quotations and alteration omitted). The constitutional requirement of standing is equally applicable to class actions. *Sutton v. St. Jude Med. S.C., Inc.,* 419 F.3d 568, 570 (6th Cir.2005). Although federal courts "do not require that each member of a class submit evidence of personal standing," a class cannot be certified if it contains members who lack standing. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 263–64 (2d Cir.2006). A class "must therefore be defined in such a way that anyone within it would have standing." *Id.* at 264. Or, to put it another way, a named plaintiff cannot represent a class of persons who lack the ability to bring a suit themselves.

*Id.*

The Third Circuit has rejected a class certification for plaintiffs claiming that the insurer's percentile reduction of PIP claims were unreasonable. *St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.,* 342 Fed.Appx. 809, 814 (3d Cir.2009). The court found that the "gravamen" of appellants' claim—"the use of computerized auditing breached the provision requiring [insurers] to pay 'reasonable' expenses"—was "non-cognizable." *Id.* at 813–14. The district court had based its denial of certification on the finding that predominance was not met, since the claim necessitated individual inquiries of reasonableness. However, the Third Circuit affirmed the district court based on a different reason, finding that "no authority suggesting that [the "reasonable and customary charge" clause of the contracts] may be construed as requiring or prohibiting a particular manner of expense review." *Id.* at 814. For that reason, the Third Circuit held that the appellants "failed to state a viable breach of contract claim." *Id.*

[4] Here, the individual questions necessary to determine breach of contract and bad faith include whether a provider's

charge was usual and customary and, thus, whether the claim payment was reasonable. These individual inquiries regarding what is "usual and customary" for each class member will predominate over whether Auto–Owners's process was reasonable and "overwhelm questions common to the class." *Comcast Corp.,* 133 S.Ct. at 1433.

[5] Our court upheld a class certification despite a standing issue where some plaintiffs had not experienced leakage from a defective plumbing fixture. *See In re Zurn Pex Plumbing Prods. Liab. Litig.,* 644 F.3d 604, 630 (8th Cir.2011). We stated that Minnesota warranty law recognized that a defect upon installation is a breach of warranty and, thus, a manifestation of the defect is not necessary for standing. *Id.* at 617–18. *Zurn Pex Plumbing* is distinguishable because it involved an alleged injury based on the violation of the Minnesota warranty statute. *Id.* Therefore, if the court found that the product was defective for all plaintiffs, despite not having any damages, the plaintiffs would still have standing. *Id.* In this case, there is no similar statute that would create an injury in fact for all class members despite the lack of damages. Some of the members likely have standing, and some likely do not. If a health-care provider accepted Auto–Owners's payment at the 80th percentile as payment in full (or if Auto–Owners settled the dispute without involving the plaintiff), the plaintiff was not injured. "A district court may not certify a class ... if it contains members **\*780** who lack standing." *Zurn Pex Plumbing,* 644 F.3d at 616 (citation and internal quotation marks omitted). Certification in this case is thus improper.

[6] There are indeed common questions of law and fact for the putative class.[2] However, the individual questions in the claims under North Dakota contract law predominate. Under North Dakota Century Code Annotated § 26.1–41–01(9), medical expenses are considered to be those that are "usual and customary." The elements of a breach of contract claim in North Dakota are the existence of a contract, a breach, and damages. *United States v. Basin Elec. Power Co-op.,* 248 F.3d 781, 810 (8th Cir.2001). To determine whether there was a breach of contract under North Dakota law will require an analysis of what are "usual and customary" rates. Members of the class incurred different injuries, which were treated by different medical providers charging different prices for their services. Answering the question of whether Auto–Owners's claim processing methodology breached its contract under North Dakota law necessitates individual fact inquiries for each member of the class.

Furthermore, the question *Dukes* poses, "*why was I disfavored[?],*" may be different for each class member. *See* 131 S.Ct. at 2552. A class member submitting an 80th percentile claim may have been disfavored because the percentile was unreasonable, whereas a 95th percentile claim may have been disfavored because the claim submitted was too high and not usual and customary. It follows that the answers to the *Dukes* question of "*why was I disfavored[?]*" may not be the same. Although there are common questions of law for the class, there are sufficient other questions of fact such that the common questions do not predominate.

[7] We conclude that class action will not be a superior method of adjudicating this case because the reasonableness of any claim payment may have to be individually analyzed. A class representative has "the right to have a class certified only if the requirements of [Federal Rule of Civil Procedure 23] are met." *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 403, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Here those requirements have not been met. Given that the certified class does not meet the predominance requirements of Rule 23, the district court abused its discretion in certifying the class.

### III. *Conclusion*

Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

Footnotes

1   The Halvorsons initially filed a claim in Arizona regarding Auto–Owners's bill review process, but Auto–Owners removed to federal court because potential claims could exceed $5,000,000.

2   The common fact and law questions concern whether Auto–Owners breached its contract and/or acted in bad faith through its use of a payment review system that caused class members to be paid less than their submitted medical expenses even though the expenses were less than the policy limits. Put another way, the question is whether the routine and relatively rigid use of the 80th percentile cutoff for claims breached the contract or constituted bad faith.

**End of Document**                                               © 2013 Thomson Reuters. No claim to original U.S. Government Works.